IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

WILLIAM HALLMAN, and
DEANNA WALKER, each Individually and on
Behalf of All Others Similarly Situated                      PLAINTIFFS

v.                          No. 3:19-cv-368-DPM

PECO FOODS, INC.                                             DEFENDANT

ORDER

1.  Hallman and Walker sue for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 207, and the Arkansas Minimum Wage Act, ARK. CODE ANN. § 11–4–211. Peco Foods, Inc. processes chicken at its facility in Pocahontas. Hallman, Walker, and many of the opt-in plaintiffs in this case worked or work in that facility's debone department. Some of the opt-in plaintiffs worked or work in other areas of the facility doing other jobs. All the plaintiffs were paid hourly for their work and were required to wear personal protective equipment while on the job. They all say that Peco shorted them for time spent during and after donning the required equipment and that the shorted time resulted in unpaid overtime in at least one of their workweeks. (There are eighty opt-in plaintiffs who, the parties agree, never worked overtime within the relevant time period. *Doc. 113 & 126.*

They will be dismissed without objection.) In April 2020, the Court conditionally certified this collective:

> All hourly paid production workers on the Debone-Conelines at Peco Foods' Pocahontas, Arkansas plant since 17 December 2016.

*Doc. 22 at 3.* The notice period opened and closed, and then reopened and closed again. About 400 plaintiffs opted in. The parties have done discovery, and many interrelated, and mostly dispositive, motions are now pending. *Doc. 105, 108, 110, 113, 116 & 119.* The Court will address them all in turn.

  **2.** These facts are undisputed. Peco's facility has several departments. The debone department has two divisions: the cone lines and the pack out areas. In the relevant time period, both divisions ran on two shifts. The shifts (day and night) were generally the same. Peco did not mandate a time for workers to arrive at its facility before their shifts. But all workers had to be fully dressed before they entered the production floor. When workers arrived at the facility, they typically clocked in for accountability purposes and could then pick up their equipment from a staging area in the breakroom. Most of the time a designated supply worker issued the equipment. Sometimes the equipment was grab-and-go from a table. Often, both methods were used. In any event, Peco issued each worker (at a minimum) a smock, rubber gloves, and a hair net before each work shift and at some point during their two unpaid shift breaks. Bearded workers also got a beard

net. To ensure food safety and worker safety, Peco prohibited the workers from eating, smoking, or going to the restroom after they had donned any one of these items. Peco also required its debone employees to wear personal safety equipment—safety goggles, earplugs, and boots or non-skid footwear. But those items, which some workers brought from home, could be worn without restriction.

Peco did not require the workers to don their equipment immediately after issue: some did and some didn't, choosing instead to socialize, smoke, eat, or go to the restroom before donning. By tacking three minutes of paid time to the beginning and end of each shift, Peco aimed to pay each employee a reasonable amount of time for donning and doffing equipment.

This is how it all worked. If on time, workers were paid starting three minutes before their shift regardless of their varying pre-shift activities. A safety brief typically occurred within a paid window of time before the debone line went hot. Cone line supervisors who gave the safety brief in the breakroom allowed workers to don their equipment during the brief. Other cone line supervisors gave their brief on the production floor and required workers to be fully dressed before the brief began. Pack out safety briefs were always given on the production floor. If late, workers were paid for the three minutes preceding their clock-in time. Peco administratively tacked three

–3–

minutes of paid time to the workers' timesheets from whenever they clocked out at the end of their workday.

Peco also gave all debone workers two breaks during each shift. Each break was thirty-four minutes. Breaks began on a shift supervisor's word. After removing and discarding their smocks, gloves, and hair nets (and beard nets as necessary), the workers were free to do as they pleased. Fresh equipment was available for reissue to workers throughout the break period. Peco expected workers to be dressed and ready to return to work on the debone line thirty-four minutes after a supervisor's initial break call. Peco deducted one hour from each worker's timesheet each shift to account for these two breaks.

**3.** Peco moves to decertify the conditionally certified collective action. In a related motion, Peco also seeks partial summary judgment against, and the dismissal of, all opt-in plaintiffs who it contends do not qualify for the collective action. The workers oppose both motions. The Court now has more information than it did at the conditional certification stage. The sole inquiry is whether the plaintiffs here are similarly situated. 29 U.S.C. § 216(b). And that depends on the facts surrounding the workers' claims, Peco's available defenses, and whether a group trial would be both fair and manageable. *Bouaphakeo v. Tyson Foods*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd*, 577 U.S. 442 (2016); *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012).

Peco's core point on decertification is that a group trial would require individualized determinations of liability. *Doc. 109 at 13*. The kinds of differences Peco objects to—"differences in PPE and clothing between positions, the individual routines of employees, and variation in duties and management among departments"—do not bar certification. *Bouaphakeo*, 765 F.3d at 797. One pay policy at one facility affecting multiple workers in the same department fits neatly in the FLSA's contemplation of a collective action. The closer questions are whether the workers in this case can present sufficient evidence, applicable to the group as a whole, to support a verdict in their favor, and, if so, whether Peco's arguments against liability, worker-by-worker, would make a group trial unmanageable.

A central issue is what kind of proof is necessary to establish collective liability. Here the parties differ in their understanding of the Supreme Court's affirming decision in *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). Peco focuses on representative expert evidence and says that, where, as here, there is none, a case like this cannot proceed as a collective action. It urges the Court to follow the course taken in *Melgar v. OK Foods*, No. 2:13-cv-2169-PKH, Doc. 205 (W.D. Ark. 29 April 2016), and to decertify the collective. The Court is not persuaded that either the Supreme Court or the Court of Appeals limited sufficient representative evidence to expert opinion testimony. Where employees "worked in the same facility, did similar work, and [were] paid under

the same policy . . . the experiences of a subset of employees can be probative as to the experiences of them all." *Bouaphakeo*, 577 U.S. at 459. Expert testimony is one way, but not the only way, to introduce representative proof to establish liability by just and reasonable inference on a collective-wide basis. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 693–94 (1946). And individual damage calculations are permissible if they don't overwhelm questions common to the collective. *Bouaphakeo*, 765 F.3d at 798; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The facts surrounding these claims weigh in favor of certification.

Peco's defenses don't require decertification, either. To the extent some individualized testimony will be required to show that a worker was, in fact, fully compensated under Peco's plug time policy, Peco can offer it. The company's *de minimis* defense is generic and can be asserted against the whole collective. Peco can argue effectively "that the varying amounts of time it took employees to don and doff different protective equipment [make] the lawsuit too speculative for classwide recovery." *Bouaphakeo*, 577 U.S. at 451. And the Court can consider any argument for judgment as a matter of law based on Peco's defenses after the parties present their evidence at trial. The Court hesitates, at this stage, to give firm directions for trial. The Court and the parties will collaborate and develop a plan. Telling the story of this case will, no doubt, involve extensive documentary proof—timesheets come

–6–

immediately to mind. Voluminous records can be distilled for easy consumption. The particulars about how best to present the evidence will become clearer in due course. The Court concludes that, in the circumstances, the workers have shown that a group trial, even if long, would be fair and manageable. The Court will therefore certify a collective subject to the following limitations.

Peco moves to dismiss workers who fall outside the conditionally certified collective. Peco's motion for partial summary judgment is bound up with the merits of its motion for decertification. Peco argues hard for fair play based on the Court's definition of the conditionally certified collective. Peco targeted its discovery on the cone lines because that is how it understood the nature of this case. *Doc. 105-1 at 6.* The Court is not convinced, however, that a certified collective can never differ from the exact parameters of a conditionally certified collective. Peco's primary authority for such a sweeping rule, *Cottle v. Falcon Holdings Management, LLC*, 892 F. Supp. 2d 1053 (N.D. Ind. 2012), accurately describes conditional certification as a discretionary case management tool. The Eighth Circuit agrees, *Bouaphakeo*, 765 F.3d at 796, as does most every other Court of Appeals. *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 89–90 (1st Cir. 2022) (collecting cases). Broad discovery yielding a more complete picture can, in some instances, bring into fuller relief a broader group of similarly situated employees. That's what has happened here.

-7-

At the notice stage, the Court had its doubts about whether workers beyond the cone lines were similarly situated. It therefore limited the collective to Debone-Coneline workers. *Doc. 22.* Many of those same doubts remain on the record presented. Walker's descriptions of the pre-shift and breaktime pay policies in Peco's breading department, for example, differ significantly from how anybody else has described those policies on the cone lines. *Doc. 108-5 at 16 & 22.* Hallman and Walker acknowledge that workers in Peco's shipping and receiving department, chicken houses, and maintenance department are not similarly situated to cone line workers, though at least one opt-in from each of those departments has asserted claims in this case. *Doc. 138 at 6.* The workers have offered proof of similarities among various other departments in Peco's facility in what kinds of protective equipment Peco requires them to wear. *Doc. 138 at 5–7.* But that is not enough to justify a vast expansion of the collective at this late stage. The Court is unable to conclude that any facility-wide pay policy existed and similarly affected each department where smocks, gloves, hair nets, or beard nets were required.

The debone department is different. The workers' experiences within that department share meaningful similarities: the same superintendent, *Doc. 116-2 at 1*, the same schedule, *Doc. 108-4 at 9*, the same required protective equipment, *Doc. 105-1 at 5 & 16*, the same required safety briefs, *Doc. 105-1 at 13*, and the same plug time pay

structure, *Doc. 105-1 at 8 & 20*. Except for immaterial specifics about the cone lines, the Court fails to see how Peco's corporate representative would have changed his declaration or deposition testimony to describe the debone department as a whole any differently than he described the cone lines. *Doc. 116-2 & 105-1*. And Peco's experts' time analyses similarly provide enough information about the whole department's donning and doffing activities to support Peco's *de minimis* and too-speculative-for-recovery arguments on a slightly wider scale. *Doc. 108-6*. Debone department workers—cone line and pack out—within the relevant time period were all similarly situated.

The Court notes Peco's objections to Hallman and Walker as representatives of the collective. *Doc. 109 at 23*. Hallman testified that he did not work on the cone lines in the relevant time period. *Doc. 108-4 at 11*. From January to June 2019, he worked primarily in Peco's meat prep department and frequently in the debone department as a pack out worker, but never on the cone lines. *Doc. 108-4 at 10*. He last worked on the cone lines in November 2016, which is one month outside the relevant time period. *Doc. 108-4 at 8*. From what the Court can gather, Walker worked on the cone lines in the relevant time period, but only for two or three hours of a single workday. *Doc. 108-5 at 20*. She mainly worked in the breading department. *Doc. 108-5 at 10*. The Court therefore suggests identification of at least one more group

representative, a person or persons who worked primarily on the cone lines.

All material circumstances considered, the Court will expand the collective to include all workers within Peco's Pocahontas debone department. Hallman and Walker, at least for now, remain adequate representatives. This is the new and certified collective:

> All hourly paid production workers in the Debone Department at Peco Foods' Pocahontas, Arkansas plant since 17 December 2016.

Workers who meet this description and have already opted-in to this case may proceed as a group. The Court does not encourage litigation practices geared toward expanding conditional certification. In most instances, deviations from a court-ordered notice pool will not be acceptable. This case, however, is atypical. The frequent shifting of workers throughout the departments in Peco's facility required casting a wide net in the notice period. That caused some confusion in the early stages, which the Court managed by accepting and directing dissemination of the revised notice form suggested by the parties. Workers throughout the facility have opted in. Peco has pursued discovery from them. No further notice is needed. No party or non-party will be unduly prejudiced. *Compare Florence v. Deli Management, Inc.*, No. 1:18-cv-4303, 2019 WL 12405933, at *3 (N.D. Ga. 7 October 2019). In the unique circumstances of this case, and on this record, a deviation from the conditionally certified collective is appropriate.

–10–

The Court recognizes that Peco's motion for partial summary judgment is premised on a group limited only to cone line workers within Peco's debone department. There may be some among the twenty-two workers identified in Peco's motion who never worked in the debone department at all. The Court is unable to tell. The motion will therefore be granted in part and denied in part without prejudice. Timothy Bailey's, James Childers', and Johnny Jones's claims are dismissed without objection, *Doc. 138 at 6*, and without prejudice. Peco may renew its motion by 29 April 2022, identifying by name those remaining opt-in plaintiffs it contends do not fall within the new and certified collective. Peco's motion for decertification will be denied.

4.  Now to the merits. The workers seek partial summary judgment on two related issues. *Doc. 105*. First, to narrow the issues for trial, they ask the Court to rule that Peco's cone line employees begin their continuous workdays when they put on their first pieces of required equipment. Second, they seek a ruling that Peco's pay policies violate the FLSA "by compensating employees for less time than they actually work." *Doc. 107 at 11*. Peco resists on both issues. Where material facts are genuinely disputed, the Court considers the record in the light most favorable to Peco. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

The workers say that Peco must pay its employees for actual time worked. They argue that includes all time spent putting on required

-11-

equipment and all activities that come after, except breaks. Peco responds that it must pay its employees only for the reasonable amount of time it should take them to don their protective equipment pre-shift. Alternatively, it argues that any time actually spent by employees beyond the six administratively tacked minutes it pays for pre-shift donning is *de minimis* and, therefore, not compensable. (There is no genuine dispute that workers are paid until they have removed their protective gear and clocked out at the end of the workday, so the Court accepts Peco's reallocation of the three post-shift minutes to pre-shift.) Peco presents variations on arguments that have been widely rejected after the Supreme Court's decision in *Alvarez v. IBP, Inc.*, 546 U.S. 21 (2005). *See, e.g.*, *Walsh v. East Penn Manufacturing Co.*, No. 5:18-cv-1194, 2021 WL 3666177, at *9 (E.D. Penn. 18 Aug. 2021) (collecting cases). This Court rejects these arguments as well.

     Peco points to *Lopez v. Tyson Foods, Inc.*, and urges the Court to adopt a reasonable time standard because, as the Court of Appeals has observed, *Alvarez* doesn't directly touch on the application of the continuous workday rule in the context presented here. 690 F.3d 869, 877–78 (8th Cir. 2012). The Court of Appeals' unwillingness to reverse for clear error on a questionable, but unopposed, jury instruction does not signal its endorsement of a reasonable time standard. If an activity is "principal," then—at least on the facts presented here—it is "sufficiently principal to commence the workday." *Alvarez*, 546 U.S.

at 34. "Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked . . .." 29 C.F.R. § 790.6(a). The FLSA is not concerned with reasonable time.

The proper inquiry is whether Peco fully compensated its employees for their actual time worked, and, if not, whether any uncompensated time resulted in unpaid overtime. Pre-shift activities that are integral and indispensable to an employee's principal work activities are compensable, unless excluded by 29 U.S.C. § 254(a)(1), because those activities are principal in themselves. *Bouaphakeo*, 765 F.3d at 795. And the continuous workday begins when an employee starts any principal activity. *Ibid*. The question then is what, if anything, among the pre-shift activities identified by the parties is integral and indispensable to a debone department worker's principal activity. An activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 33 (2014).

Peco does not seriously dispute whether pre-shift donning is integral and indispensable to its debone workers' principal activities. It is, and it is therefore compensable. Instead, Peco relies on its time

–13–

studies and concludes that its recordkeeping was, more likely than not, accurate enough to compensate employees for those activities. *Doc. 130 at 20*. Or, if not, any overage was *de minimis*. *Doc. 130 at 8–10*. While those arguments are not foreclosed on this record and Peco may present them at trial, the continuous workday rule is the proper standard to assess their forcefulness. Peco does not cite any authority suggesting that the potential inequities of allowing workers to take advantage of the continuous workday rule warrant the rule's abandonment. And the Court concludes that they do not. *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 668 (E.D. Ark. 2011); *Walsh*, 2021 WL 3666177 at *10. The standard is actual time worked, which is measured by the continuous workday.

The Court therefore holds that, for Peco workers in the debone department, the continuous workday began when an employee donned their first piece of food protection equipment—smock, gloves, hair net, or beard net. No reasonable juror could conclude otherwise. After that necessary step, employees were restricted from engaging in free activity and were owed compensation for actual time worked.

The workers also seek a determination that Peco's pay policies violated the FLSA. As Peco recognizes, this part of the motion appears to be a request for a liability determination. On the current record, the Court cannot decide as a matter of law whether Peco's failure to accurately record its employees' workdays ever resulted in unpaid

overtime. *Helmert*, 805 F. Supp. 2d at 665. It does not appear that the workers seek a ruling about whether Peco has violated the FLSA's recordkeeping requirements, 29 U.S.C. § 211(c), so the Court declines to make one. Under-compensation, and therefore the ultimate question of liability, must be tried to the jury consistent with the Court's determination of when the continuous workday began. The workers' motion will be partly granted and partly denied.

5.  Peco seeks partial summary judgment that the workers' shift breaks are not compensable as a matter of law. The workers respond that pre-break doffing, cleaning, and waiting and post-break donning took up enough of the thirty-four minutes to make the breaks illusory. They seek compensation for an additional hour of work each shift. Where material facts are genuinely disputed on this issue, the Court considers the record in the light most favorable to the workers. *Oglesby*, 929 F.3d at 532.

The parties disagree about the standard for evaluating the compensability of meal breaks or shift breaks. Citing *Guyton v. Tyson Foods, Inc.*, 767 F.3d 754 (8th Cir. 2014), Peco says the Court must determine whether, viewed as a whole, the breaks were predominantly for the benefit of Peco or the workers. If for the workers, Peco argues, then the breaks are not compensable. The workers take a different position, urging the Court to apply an actual time standard similar to how the Court has evaluated pre-shift donning activities. Similar, but

not exact, because the workers also seek compensation for their free time between doffing and donning. They say that any break that is not *bona fide*, as set out in 29 C.F.R. § 785.19, is no break at all.

The "predominantly for the benefit of the employer" standard is the right one for evaluating meal break claims in this Circuit. *Henson v. Pulaski County Sheriff Dept.*, 6 F.3d 531, 533–34 (8th Cir. 1993). The workers' helpful and precise description of their claims, *Doc. 136 at 7-8*, places those claims firmly within that framework. They are not seeking compensation for meal-period donning and doffing alone, and therefore invite a more wholistic, practical, and flexible approach: "Whether an employee is entitled to mealtime compensation depends on whether the meal period as a whole was spent predominantly for the benefit of the employer or whether the employee was able to use the meal period effectively for his or her own purposes." *Lopez*, 690 F.3d at 880–81 (internal quotation omitted).

The workers concede, and the Court accepts, they regularly had approximately fifteen to twenty minutes of free time within each break period. *Doc. 136 at 9*. The workers' collective testimony bears out that time was tight, but adequate to eat, socialize, and take care of other necessities and non-necessities. *Doc. 119-3 at 24, Doc. 119-4 at 8, Doc. 119-5 at 8–9, Doc. 119-6 at 14 & Doc. 119-7 at 25& 28*. The workers insist that there is a line between the fifteen minutes here and the twenty-five minutes in *Guyton* that creates a triable issue on their shift break claims.

–16–

*Doc. 136 at 10-11.* There is no indication in the precedent that the test is reducible to a matter of percentages. And the Eighth Circuit has specifically rejected a time-based approach. *Lopez*, 690 F.3d at 880–81. No reasonable juror could conclude on this record that the workers were unable to use their shift breaks for their own purposes.

The breaks predominantly benefited the workers. Peco's motion will therefore be granted.

6. Peco's motion for judgment on willfulness is premature. This issue is inextricably bound up with the merits. The current record is not clear enough to rule out reckless disregard as a matter of law. And, as the workers point out, the alternative request for dismissal with prejudice of claims barred by the three-year statute of limitations is not specific enough. The Court will not rule on hypotheticals. If any plaintiffs exist who fall within the new and certified collective and whose claims Peco contends are barred by the three-year statute of limitations, Peco may identify them by name in a renewed motion, which is due by 29 April 2022. Peco's motion will be denied without prejudice.

7. Peco's motion to dismiss opt-ins who never worked overtime is mostly unopposed. These individuals are listed in Appendix A. The workers argue that April Hall should remain in the case because she could have worked overtime. *Doc. 126*. She will for now. The others will drop out.

\* \* \*

Motion, *Doc. 108*, denied. Motion, *Doc. 110*, granted in part and denied in part without prejudice. Timothy Bailey, James Childers, and Johnny Jones are dismissed and their claims are dismissed without prejudice. Motion, *Doc. 105*, partly granted and partly denied. Motion, *Doc. 119*, granted. Motion, *Doc. 116*, denied without prejudice. Motion, *Doc. 113*, mostly granted and partly denied. The opt-in parties identified in Appendix A are dismissed and their claims are dismissed with prejudice. Any clean-up motions are due by 29 April 2022. A Fourth Amended Final Scheduling Order will issue.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

31 March 2022

# APPENDIX A

| | | |
|---|---|---|
| Brandy Arnold | Willona Y. Davis | Taquila Jenkins |
| Brian Baker | Xavier Davis | Elisa Johnny |
| Gregory Ball | Elesha Dudley | Ricky N. Johnson |
| Nicolas Banales | Jason Duran | Matthew Kimble |
| Daries Banks | Sandra Eggers | Jacquelyn Layne |
| Iyaun Bell | Kelly C. Fletcher | Rodney Lee, Jr. |
| Eric Berry | Katherine L. | Keierica Lewis |
| Senait Biresaw | Seward Gibby | Clennon Lyles |
| Danny Blake | Lissa D. Grady | Cory McRay |
| Rosie Bolton | Joann Green | Andrea Marino |
| Calvin Bonds | Geoffrey Grissinger | Aye Meh |
| Veronica Bradley | Thomas Haney | Belinda Montoya |
| Annie Brown | Kianna Harris | Christopher Moran |
| Laquita Buckhalter | Darrell Hatcher | Lonnie Moss |
| Seth Buschschulte | C. Henderson | Ruby Moss |
| Florinda Castillo | Cynthia Hill | Katara Mucherson |
| Carin Cody | Deshawn C. Hill | Eric D. Newkirk |
| Pamela Cody | Crystal Hubbard | James Newsom |
| Marcus Coleman | Arthur Hughes | Klaw Reh |
| Ashley Collins | Sammie Hunter | Kaylin Seals |
| Shyla Colter | Juanita Ingram | Timothy Sheard |
| Marcus Craig | Tyran Jackson | Michael Shepard |

Jeremy Sheppard

Nicholas B. Sidenstricker

James Sims

Danny Small, Jr.

John Taylor

Michael Thomas

Hunter Chase Tidwell

Hunter Tousignant

Nathaniel Watson

Andrew Watts

Daniel White

Jermil White

Shelly White

Michael T. Wolverton

Trevius Woodard

- A-2 -